CITY OF DALLAS V DALLAS CONSOLIDATED STREET RAILWAY COMPANY.

No. 2447. Decided June 19, 1912.

**1.—City Ordinance—Adoption by Popular Vote—Charter.**

Under the charter of the City of Dallas, an ordinance submitted to popular vote upon the initiative of petitioning voters became valid and binding upon official declaration of the result of a vote in its favor. No concurrence by the city commission was necessary to its adoption. (P. 340.)

**2.—Injunction—Election—Initiative and Referendum—Political Question.**

Courts have no power to interfere by injunction with canvassing returns and declaring the result of an election, on the ground that the regulation sought to be adopted by popular vote was not one which could be so enacted, and would, if adopted, interfere with property rights of the complaining party. This was a political proceeding and not subject to judicial control. (Pp. 340, 342.)

**3.—Same—Case Stated.**

Plaintiff, a street car company, sought to enjoin the Commission governing a city from canvassing the returns and declaring the result of an election held under the provision of its charter for adoption of ordinances by popular vote under initiative and referendum. The ordinance proposed limited the charges for carrying passengers by street railways and regulated their operation. It was alleged to be of a character not authorized by the charter to be so submitted and enacted, and therefore invalid, though the vote was in favor of its adoption, and to threaten, if declared adopted, injury to plaintiff's business and rights. Held that the District Court had no power to enjoin the Commissioners from such action, which was a political one and not to be interfered with by the courts. (Pp. 339-344.)

**4.—Cases Discussed.**

Robinson & Watson v. Wingate, 36 Texas Civ. App., 65; Same Case, 98 Texas, 267; Townsen v. Mersfelder, 49 Texas Civ. App., 289; Merrill v. Savage,

49 Texas Civ. App., 292; approved and followed. City of Austin v. Austin Cem. Assn., 87 Texas, 330; Harding v. Commissioners, 95 Texas, 174, distinguished. (Pp. 343, 344.)

Questions certified from the Court of Civil Appeals, Fifth District, in an appeal from Dallas County.

*Jas. J. Collins* and *Lee Richardson,* for appellant.—A court of equity will not interfere by way of injunction with a tribunal specially constituted by law for the purpose of canvassing the returns and declaring the result of an election, irrespective of whether the election was legally held or not. Robinson & Watson v. Wingate, 36 Texas Civ. App., 65; Robinson & Watson v. Wingate, 98 Texas, 267; Townsen v. Mersfelder, 49 Texas Civ. App., 289; Merrill v. Savage, 49 Texas Civ. App., 292; Cyc. L. 22, p. 886, and authorities cited under subdivision B; New Orleans Waterworks Co. v. New Orleans, 164 U. S., 471; Charter of City of Dallas, art. 8, Spe. Laws, 1907; Wade v. Nunnelly, 19 Texas Civ. App., 276; City of Galveston v. Mistrot, 47 Texas Civ. App., 637; Kissinger. v. Hay, 52 Texas Civ. App., 295; Wood v. City of Victoria, 18 Texas Civ. App., 573; Greiner-Kelly Drug Company v. Truitt, 97 Texas, 377.

The ordinance complained of, which was voted upon at said election, is not complete in itself, and does not seek to affect the plaintiff's right in itself, but merely appears to be directory to the Mayor and Board of Commissioners of the City of Dallas. New Orleans Waterworks Co. v. New Orleans, 164 U. S., 471; Waterbury v. Laredo, 60 Texas, 523; 2 High on Injunctions, p. 814.

*Baker, Botts, Parker & Garwood,* and *Spence, Knight, Baker & Harris,* for appellee.—The electorate of the City of Dallas, is wholly without power to initiate legislation regulating the rates of public utility corporations. There was, therefore, no lawful authority for the submission of a rate-making ordinance to the citizenship of Dallas, nor is there any lawful authority to declare the result of any such election or attempt in anywise to act pursuant to such vote. Southwestern Tel. & Tel. Co. v. City of Dallas, 134, S. W., 321.

Where the electorate or the governing body of a municipality is proceeding to pass an ordinance which impairs the property rights of a citizen, and where the electorate or the governing body is wholly without authority over the subject-matter of proposed legislation, equity may intervene at any stage of the proceedings with its writs of injunction—equity clearly having jurisdiction to enjoin either the holding of the election, the passage of the ordinance, the declaration or publication of the result, or the enforcement of the proposed ordinance; it being immaterial, so far as its jurisdiction be concerned, at what stage of the proceedings it interferes; and neither the electorate nor the governing body can be heard to say that equity is interfering with their political rights or their legislative discretion, for the reason that they have no such political rights and are not entrusted with any such legislative discretion. While equity will not enjoin the action of a governing body while proceeding within the limits of its well-defined powers, it has jurisdiction to restrain it from

acting in excess of its authority and from the commission of acts which are *ultra vires.* Sweeney v. Webb, 33 Texas Civ. App., 324; Oden v. Barbee, 103 Texas, 449; State v. Cunningham, 51 N. W., 724; Minneapolis St. Ry. v. City of Minneapolis, 155 Fed., 989; Tolbert v. Long, 67 S. E., 826; County Atty. v. Eggleston, 10 Pac., 3; Wilton v. Pierce County, 112 Pac., 386; Roswell v. Ezzard, 57 S. E., 114; Layton v. Mayor, 23 So., 99; August Busch Co. v. Webb, 122 Fed., 65; Kaufman County v. McGauhey, 3 Texas Civ. App., 655; Board v. McComb, 92 U. S., 531; Conner v. Gray, 88 Miss., 489; Macon v. Hughes, 36 S. E., 247; Murfreesboro R. R. Co. v. Commissioners, 12 S. E., 952; International Trading Stamp Co. v. City of Memphis, 47 S. W., 136; Poppleton v. Morres, 93 N. W., 747; Solomon v. Fleming, 51 N. W., 304; Delaware County, 13 Atl., 62; Knickerbocker Trust Co. v. City of Kalamazoo, 182 Fed., 865; Davis v. Mayor, 1 Duer, 452; Keen v. Mayor, 29 S. E., 42; Long v. Shepherd, 48 So., 675; Maysville v. Smith, 64 S. E., 131; Segars v. Parrot, 30 S. E., 273; Morris v. Board, 30 Atl., 667; Fishing Co. v. Benson, 108 Pac., 126; Missouri v. Gates, 89 S. W., 881; 1 Pomeroy, Eq. Juris., sec. 328, 880; 2 High on Inj., sec. 1241; City v. Gardner, 97 Ind., 1; Railway Co. v. Shannon, 10 L. R. A., 681; Dean v. Duncan, 81 Texas, 295; Ewing v. Duncan, 81 Texas, 235; DeKalb County v. Atlanta, 132 Ga., 727; Electric Co. v. City of Wymore, 82 N. W., 626.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

This was a suit instituted by the Dallas Consolidated Electric Street Railway Company against the City of Dallas, its Mayor, Board of Commissioners and its Secretary, to enjoin them from canvassing the returns and declaring the result of a certain election held in the city of Dallas on April 22, 1912, at which an ordinance prescribing the fares to be charged passengers of street railway companies operating in that city, and regulatory of the carriage of passengers and the operation of cars, was submitted to the qualified voters and voted upon under the article of the city's charter providing for the submission of a proposed ordinance to such vote upon the petition to the Board of Commissioners of a certain percentage of the qualified electors. Both the election and the ordinance were assailed in the plaintiff's petition upon numerous grounds, set forth with elaboration and clearness. Without reciting the allegations at length, it may be said that the basis of the suit was the alleged illegality of the election because of the absence of any power in the electorate of the city to initiate or adopt legislation regulating the rates of public utility corporations; wherefore it was alleged, and is here contended, that no lawful authority existed for the submission of the ordinance to a vote, or for the declaration of the result by the governing body of the city, or for any act on their part in relation thereto pursuant to such vote, and that both the election and the ordinance were accordingly void. In this connection it was further sufficiently alleged that the franchise and property rights of the plaintiff would be injuriously affected by the existence of the ordinance; that the ordinance would become effective upon the declaration of the result of the election and its enrollment, and would thereupon operate as notice to the public that it con-

stituted a binding regulation upon the company; and its patrons would seek to avail themselves of the fares and regulations therein prescribed to its harassment and injury in the operation of its cars, the impairment of its franchise privileges, diminishment of its earnings, depreciation of its securities and confiscation of its property.

The judge of the District Court granted a temporary restraining order on the petition as prayed for, and ordered the defendants to appear at a later date and show cause why a temporary injunction should not issue. The defendants duly answered by general and special demurrers, a general denial, and pleaded specially that the ordinance was duly voted upon at the election, and under the law it was the duty of the Board of Commissioners to canvass the returns of the election; that the ordinance was regularly presented and submitted under the provision of the charter referred to, and was duly voted on at the election; and further that the ordinance was not complete without the concurring judgment of the Board of Commissioners. Upon hearing on the petition and the defendants' exceptions and answer, the court continued the injunction in force. From this order the defendants appealed to the Court of Civil Appeals. The case is before us upon questions certified by the Court of Civil Appeals, the first of which is as follows:

"Did the District Court of Dallas County err, upon the facts alleged in plaintiff's petition, in granting the injunction restraining the defendants from canvassing the returns and declaring the result of the election held on the second day of April, 1912, in so far as the same pertains to the initiative ordinance complained of by plaintiff? In other words, under the facts alleged, does the canvassing of the returns and declaring the result of the election involve a political question of which a court of equity will not take cognizance?"

While it was urged on argument in behalf of the plaintiff in error that the ordinance in question was in the nature of a direction to the Board of Commissioners and could not become a completed enactment without their concurring judgment as expressed in an ordinance regularly passed by them pursuant thereto, we are of the opinion that the ordinance would become effective without the necessity of any such action by the Board. The language of the charter upon the subject is such as to relieve the question of any doubt. It says: "If a majority of the qualified electors voting on said proposed ordinance shall vote in favor thereof, such ordinance shall thereupon become a valid and binding ordinance of the city, and any ordinance proposed by petition, or which shall be adopted by a vote of the people, cannot be repealed or amended except by a vote of the people."

The plain declaration of this charter provision, that "such ordinance shall *thereupon* become a valid and binding ordinance of the city," forbids the view that the completed enactment of this ordinance was dependent upon anything further than the ascertainment by the Board of Commissioners that a majority of the qualified electors had voted in favor of it.

While this is true, it is equally clear that such ascertainment is essential, at all events, before the ordinance can become a binding legislative

act, and that such determination is not possible except by a canvass of the vote cast at the election. At the threshold of the case we are therefore confronted with the question, whether, on account of alleged invalidity of municipal legislation by a direct vote of the electorate arising because of alleged want of power or authority in such legislative body in the premises, the courts, for the protection of property rights, are at liberty to interfere, and by enjoining a canvass of the vote, prevent the legislative will from assuming completed form and expression. Differently stated the question simply is, whether this ordinance in its incomplete status, having only been voted on and the result of such vote still not officially determined, amounted to such an invasion of the property rights of the plaintiff, in the legal sense, as that the powers of a court of equity may be properly appealed to to obstruct the determination of the result of the election, even if it be conceded that the ordinance is void for any or all of the reasons urged against it.

The case is not one where the enforcement of an enacted and effective city ordinance is attempted to be enjoined because of its invalidity and prejudicial effect upon property rights. It is one where, upon such grounds, it is sought in effect to prevent by judicial remedy the enactment itself of an ordinance by enjoining the act which will put it in force. It is therefore necessary to the decision that there be clearly ascertained, determined and respected that boundary line that separates political power and judicial authority, and defines their respective limits.

Elections belong to the political branch of the government, and the general rule is that they are beyond the control of the judicial power. The authority resides in the courts to determine their validity, and in cases of invalidity to protect property rights which may be wrongfully impaired if their result is suffered to become effective and is sought to be enforced; but a proper deference for their respective powers that is imposed upon the several departments of the government, should constrain the courts to caution and certainty when their authority is invoked against the determination of the popular will. It should always be remembered that the separation of the great powers of government into different and distinctive departments, each independent in its own sphere and protected by constitutional limitations that neither can transcend but which all must respect, is the distinctive feature of our system, and its accomplishment is the fundamtental fact of our history. The preservation of these powers in their full integrity and independence is a matter of common concern, for upon the freedom of their exercise depend alike public repose and private security, and neither will long endure if their abridgement be permitted or encouraged. While the courts will not and should not hesitate to discharge their responsible functions in all cases that fall within the judicial authority, to them peculiarly is committed the duty of emphasizing the obligation that rests upon each department of the government to observe its rightful limits, and for this reason it is the more incumbent upon them not to exceed their own.

As elections are essentially the exercise of political power, it can-

not be doubted that all action properly related thereto and necessary to their completion is from the same source, and is but the expression of the same power. The canvassing of the returns of an election is necessary to the determination of the result; it is an integral part of the election itself, without which the election is a vain proceeding, and as such inheres as a right sanctioned by the political power, as absolute as the right of the electorate to vote or for the election to be held. When it is declared that because of their relation to the political power of the government, elections are beyond the control of the judicial power, it is meant that the whole election, including every step and proceeding necessary to its completion, is exempt from judicial interference; and the canvassing of the returns of an election must therefore be held as within the rule and justly entitled to its protection.

But it is urged by the able counsel for the defendant in error that this was an illegal election and this ordinance is a void ordinance because of the absence of any authority in the electorate of the city of Dallas to initiate or adopt legislation of the character embraced in the ordinance; that while the general rule is as here stated, it has reference only to such elections as it is competent for the electorate to hold, and only to such legislation as the legislative body is authorized to enact. It is a sufficient answer to this contention to say that the validity of this ordinance is one question, and the right of the electorate of the city to hold the election and have the election completed by the ascertainment of the result through a canvass of the votes by the Board of Commissioners, in the exercise of their political power without restraint from the courts, is another, the rightful exercise of which right was not dependent upon the validity of the ordinance voted on at the election. Whatever view may be taken in respect to the validity of the ordinance, the election was had under color of authority, for this court has heretofore held that ordinances may be initiated and adopted under this provision of the city charter. Southwestern Tel. & Tel. Co. v. City of Dallas, 104 Texas, 114, 134 S. W., 321. Are the courts at liberty to restrain the holding of an election of this character because the measure proposed to be voted on is invalid as a legal enactment? If so, it will become necessary that the validity of such proposed enactments be submitted to and decided by the courts in advance, and that under such regime the courts determine for the people, beforehand, whether they have the lawful right to hold the election, for under this doctrine the election may be stayed by the courts until the validity of the proposed legislation is by them judicially determined, which in its operation and result would be the same as an adjudication by the courts as to whether the election may be rightfully held. In such event the courts would be resolved into mere moot tribunals for the trial of causes affecting no property rights, with no real interest at stake and no substantial issue joined, but at most only sitting in judgment upon legislation that might never be enacted into law and anticipating results otherwise that might never happen.

It might as well be argued that a court of equity may enjoin the Legislature from enacting an unconstitutional statute, or the pre-

siding officer of either branch of the Legislature from canvassing the vote of such body thereon and declaring the result, or the Governor from approving it. Instances may occur when a Legislature will usurp judicial or executive power and attempt legislation which it is wholly without authority to enact, just as it is here contended that this electorate was without authority to enact this ordinance. But in such case would it be contended that the courts were clothed with the power to enjoin such legislation or acts necessary to its completion as such? Such a proposition can no more be maintained than would such a perversion of judicial power be tolerated. The political power of the State may not be thus transferred to the courts. They are neither designed to exercise that power, nor equipped to control it. They exist only to give effect to the judicial power of the government, and to maintain and administer its judicial authority. To interfere with the enactment of legislation is not within their province. Their remedies lie ready but at rest until proper occasion demands their use. They are not available against void legislation enacted under color of authority until its enforcement, as distinguished from its enactment, is attempted or threatened to the destruction or impairment of property rights. Until then in the eyes of the law there is no invasion of such rights, and without such invasion of rights there can be no lawful exercise of judicial authority.

The law does not assume that sworn officials will attempt the enforcement of an invalid law. Its presumption is to the contrary, and it therefore awaits such attempted or threatened enforcement before it moves at the instance of parties in interest. If this ordinance is a nullity, as is here contended by the defendant in error, the canvassing of the returns of this election will not quicken it with life and virtue. At all events it is not a binding enactment until its enactment is completed, and until it is a binding enactment it retains its relationship to the political power, and is immune from the process of judicial authority.

Were the question an open one in this State, on principle and in reason we would be forced to conclude that the suit of the defendant in error was premature under any view, but this position is supported by the clearly reasoned opinion rendered by the Court of Civil Appeals for the First District through Justice Gill in the case of Robinson & Watson v. Wingate, 36 Texas Civ. App., 65, 80 S. W., 1067, which was approved by this court in the same case in an opinion rendered by Justice Williams, where, in speaking of the authority of the court to enjoin a Commissioners' Court from canvassing the returns and publishing notice of the result of a local option election, which was assailed as invalid, it is said: "The reasons may be summed up in the conclusion that there is in the performance of these statutory duties no invasion, in a legal sense, of the property rights of the complainants as licensed liquor dealers, whether the election is open to attack in other ways or not." 98 Texas, 267, 83 S. W. 182. To the same effect these further authorities may be cited: Townsen v. Mersfielder, 49 Texas Civ. App., 289, 109 S. W. p. 420; Merrill v. Savage, 49 Texas Civ. App., 292, 109 S. W. p. 408; Dickey v. Reed, 78 Ill., 261.

The case of the City of Austin v. Austin Cemetery Association, 87 Texas, 330, did not involve the question here presented, for there the suit was not to enjoin the enactment of an ordinance. It was to restrain the enforcement of an ordinance already duly enacted. Nor is the opinion of Chief Justice Gaines in Harding v. Commissioners, 95 Texas, 174, subject to a construction in opposition to these views. All that the court decided in that case was that the failure of the petition to allege that the effect of declaring that the election there involved had carried would be to imperil a pecuniary right of the plaintiff, was of itself sufficient to justify the refusal of the injunction against the declaration of the result of the election. It was not held that had the petition contained such allegation the injunction would have properly issued, although Justice Bookhout of the Court of Civil Appeals for the Fifth District so construed the opinion in Sweeney v. Webb, 33 Texas Civ. App., 324, 76 S. W., 766.

Many cases have been cited from other jurisdictions, some of which sustain the position of the defendant in error; but we believe the sounder doctrine is that to which the courts of this State have heretofore adhered and from which we are not constrained to depart. We are unwilling to establish the precedent and write it down as the law of this State that the courts in such cases may in this manner predetermine the validity of legislation and assume such control of the exercise of political power.

It follows that the question above stated, certified by the Court of Civil Appeals, should be answered to the effect that the District Court erred in granting the injunction restraining the defendants in the case from canvassing the returns and declaring the result of the election, and that under the facts alleged the canvassing of the returns and declaring the result of the election involved a political question not cognizable by a court of equity. Such answer to this question makes it unnecessary to answer the additional questions certified by the Court of Civil Appeals.

The validity of the ordinance involved is not passed upon, and we express no opinion upon that question.